UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
FEB 1 2 2013
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) No. | 13CR 0137 |
| | ) | |
| GROEB FARMS, INC. | ) | Violation: Title 18, United States Code, Sections 545 and 2 |

JUDGE KENDALL
MAGISTRATE JUDGE COX

The UNITED STATES ATTORNEY charges:

At times material to this information:

1. The United States Department of Commerce was charged with regulating commerce in the United States, and as part of its responsibilities had the authority to impose duties on certain foreign imports. One type of duty the Department of Commerce imposed was known as an "antidumping duty." Dumping occurred when foreign merchandise was sold in the United States at less than fair market value and when U.S. industries were injured. Antidumping duties were intended to ensure fair competition between United States companies and foreign industry, and to counter international price discrimination that caused injury to United States industries from "dumping."

2. In December 2001, the Department of Commerce determined that Chinese-origin honey was being sold into the United States at less than fair market value. As a result, the United States government imposed default antidumping duties on Chinese-origin honey. From about mid-June 2006 through about

mid-July 2007 antidumping duties on Chinese-origin honey were approximately 212% of the declared value of the imported honey and thereafter, from about mid-July 2007 through about mid-July 2008, were approximately 221%. Beginning in about July 2008 antidumping duties on Chinese honey were assessed against the entered net weight of the imported honey, first at $2.06 per net kilogram and, later, from about January 2009 to the present, at $2.63 per net kilogram, in addition to a "honey assessment fee" of one cent per pound on all honey.

3. The United States Department of Homeland Security, Bureau of Customs and Border Protection (CBP), was responsible for, among other things, the examination of merchandise entering the United States to ensure that it was admissible under and in compliance with United States laws, and the assessment and collection of taxes, fees, and duties on imported merchandise, including antidumping duties.

4. CBP entry forms 3461 (Entry/Immediate Delivery) and 7501 (Entry Summary) required importers to provide specific and truthful information relating to imported merchandise, including a description of the merchandise and the merchandise's harmonized tariff code, manufacturer, value, and country of origin. A customhouse broker or agent normally handled the process of entering goods into the United States on behalf of an importer, which included filing entry documents with CBP based on information provided by the importer.

5. Chinese-origin honey imported and entered into the United States through a third country other than China, and mislabeled and declared as originating from that third country was illegally "transshipped." Chinese-origin honey imported and entered into the United States as originating from a country other than China, even if not transshipped, was considered an illegally misdeclared product. Similarly, Chinese-origin honey imported and entered into the United States as a product other than honey, including, molasses, fructose, rice syrup, glucose syrup, honey syrup, and apple juice concentrate (collectively "sugars and syrups") was also considered an illegally misdeclared product. When CBP was misled about the Chinese origin of honey or its description, it would not know to impose the required antidumping duties on the illegally transshipped or illegally misdeclared honey.

6. Defendant GROEB FARMS, INC., was the largest industrial honey supplier and packer in the United States, with its principal place of business in Onsted, Michigan and other processing and packing facilities, namely, Belleview, Florida; Colton, California; San Bernardino, California since December 2012; and from January through September 2011, Baytown, Texas. GROEB FARMS processed and sold honey to retail, foodservice, and industrial customers. In about March 2007, outside investors purchased a majority interest in GROEB FARMS and constituted a new Board of Directors with oversight functions.

7. Executive A was a senior GROEB FARMS executive, who reported directly to GROEB FARMS' Board of Directors and exercised control, authority, responsibility, and supervision over GROEB FARMS, including its operations and executive management team. Executive A served as management's primary point of contact to the Board of Directors and communicated directly to the Board, GROEB FARMS' customers, and the public regarding GROEB FARMS' polices, positions, and practices on food safety and illegally transshipped and illegally misdeclared honey.

8. Executive B was a senior GROEB FARMS executive who reported directly to Executive A and exercised control, authority, responsibility, and supervision over purchasing honey on behalf of GROEB FARMS.

9. Beginning no later than February 2008 and continuing until about April 2012, GROEB FARMS, as part of a fraudulent practice, received, bought, sold, and facilitated the transportation, concealment, and sale of merchandise, namely, at least approximately 1,578 container loads of Chinese-origin honey knowing the same to have been imported and brought into the United States contrary to law, namely, as part of a fraudulent practice in violation of Title 18, United States Code, Section 542, all in violation of Title 18, United States Code, Section 545.

10. As part of the fraudulent practice, GROEB FARMS, acting through Executive A and Executive B, purchased Chinese-origin honey for processing at its facilities and sold that honey to its domestic customers as mislabeled non-Chinese

honey, and at other times as Chinese honey, all while knowing that the honey had been falsely and fraudulently imported and entered into the United States in avoidance of U.S.-imposed antidumping duties and at times, honey assessment fees, including in the following means:

    a.    falsely and fraudulently declaring Chinese-origin honey as having originated from countries other than China, including Indonesia, Malaysia, Mongolia, Thailand, and Vietnam; and

    b.    falsely and fraudulently describing Chinese-origin honey as a product other than honey, including sugars and syrups.

11.    Beginning in or about 2008 and continuing through in or about 2012, GROEB FARMS instituted first-party onsite supply chain audits and inspections of manufacturers and suppliers. As part of the fraudulent practice, Executive A and Executive B:

    a.    continued to deliberately purchase honey from U.S.-based brokers receiving honey from Asian suppliers, including Suppliers 1, 2, 3, and 4, even after the audits raised substantial concerns that these overseas suppliers were providing GROEB FARMS with illegally transshipped and misdeclared Chinese-origin honey;

    b.    continued to deliberately purchase honey from another U.S.-based broker receiving honey from another Asian supplier, Supplier 5, even after GROEB FARMS was refused access to Supplier 5's facilities to conduct onsite supply chain audits and inspections; and

    c.    marketed and promoted GROEB FARMS' compliance with applicable laws, including its first-party supply chain audits and inspections, to customers and the public.

12.    As part of the fraudulent practice, GROEB FARMS, acting through Executive A and Executive B, knowingly obtained and caused others at GROEB

FARMS to receive fake and fraudulent bills of lading, invoices, packing lists, country of origin certificates, and other papers, which records had been used to falsely and fraudulently declare Chinese-origin honey as having originated from countries other than China and at times, as sugars and syrups.

13. As part of the fraudulent practice, GROEB FARMS, acting through Executive A and Executive B, provided false, fraudulent, and misleading representations to GROEB FARMS' (a) Board of Directors; (b) customers; and (c) the public regarding GROEB FARMS' involvement and participation in the knowing purchase, receipt, processing, mislabeling, and sale of Chinese-origin honey that falsely and fraudulently entered the United States in avoidance of U.S.-imposed antidumping duties and at times, honey assessment fees, and in so doing:

   a. maintained a corporate website containing false and fraudulent representations about its lack of involvement in illegal transshipping and customs fraud-related matters; and

   b. communicated by email and mass marketing material in furtherance of its fraudulent practices.

14. As part of the fraudulent practice, GROEB FARMS and others, including Executive A and Executive B, misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the acts and the purposes of the acts done in furtherance of the their criminal activities.

15. For the period from in or about February 2008 and continuing until about April 2012, as part of the fraudulent practice, GROEB FARMS caused losses to the United States of no less than $78,866,216.

16. On or about January 25, 2010, in the Northern District of Illinois, Eastern Division and elsewhere,

GROEB FARMS, INC.

defendant herein, together with Executive A and Executive B, and others known and unknown, as part of a fraudulent practice, received and bought merchandise, namely, twenty-two container loads of Chinese-origin honey with a contract value of $882,178, knowing the same to have been imported and brought into the United States contrary to law, namely, as part of a fraudulent practice in violation of Title 18, United States Code, Section 542, in that the honey was falsely and fraudulently imported and brought into the United States described as Chinese honey syrup, some of which was transported through the Northern District of Illinois and later delivered into the Northern District of Illinois as finished product.

In violation of Title 18, United States Code, Sections 545 and 2.

*Gary S. Shapiro /MSS*
UNITED STATES ATTORNEY